UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**UNITED STATES OF AMERICA,**

      Plaintiff,

vs.                                    **Case No.: 8:10-CV-1998-T-23EAJ**

**WILLIAM P. DOUCAS, et al.,**

      Defendants.
_____/

## REPORT AND RECOMMENDATION

Before the court are Plaintiff's **Motion for Preliminary Injunction** (Dkt. 5) and Defendants' **Response** (Dkt. 18).[1] Following an evidentiary hearing and argument on the motion, I recommend that the motion be granted in part.

## Findings of Fact

1.  William P. Doucas and Elizabeth Doucas ("the Doucases") are jointly liable for federal income taxes for the years 2000 and 2002-2006 totaling $2,302,184.16 as of July 28, 2010, including statutory additions.

2.  William P. Doucas owns approximately 15% of the stock of Engage Networks, Inc. ("Engage Networks"). The Leventi Trust ("Leventi") is the sole member of Astra Family Holdings, LLC ("Astra"), which holds approximately 85% of the stock of Engage Networks.

3.  As of December 2008: 1) William P. Doucas's Engage Networks stock was worth

---

[1] The motion has been referred to the undersigned for a report and recommendation (Dkt. 7). A temporary restraining order was entered on September 14, 2010 (Id.). The court extended it on September 23, 2010 (Dkt. 11).

        approximately $1,600,000, against which he owed $1,400,000; 2) Astra's Engage Networks stock was worth approximately $9,000,000; and 3) the Doucases owned real property in Sarasota, Florida worth $5,650,000 but made monthly payments of $29,596 against a $5,679,818 mortgage.

4. In October 1996, the Doucases filed their tax return for 1992. They owed $36,551, exclusive of interest and penalties.

5. Leventi was established in February 1997 with William P. Doucas as the grantor and his children as the beneficiaries. Gaar W. Steiner, an attorney, was the initial trustee, however, upon his death in 2003 Elizabeth Doucas became the trustee.

6. In May 1999, Leventi purchased a parcel of real estate in Wisconsin ("the Wisconsin property") using funds from Engage Networks. The Doucases used the property as a residence.

7. Leventi owns a 13-foot Boston Whaler motorboat; a 21-foot Malibu motorboat; a 26-foot Harris Kayot motorboat; a 2003 Mercedes Benz SL500; a 2005 Land Rover Range Rover Limited Edition; and a 2009 Aston Martin Vantage. The Doucases use each of these boats and vehicles as personal assets.

8. From 1997 to 2005, the Doucases did not have a bank account. Their personal expenses were paid from bank accounts issued to Astra and Leventi and were covered by cash infusions from Engage Networks to Leventi through Astra.

9. In March 2007, the Internal Revenue Service sent a letter to the Doucases' accountant/power of attorney advising that distributions from Engage Networks to Astra or Leventi could be treated as income to the Doucases.

10. Approximately six weeks later, Elizabeth Doucas, as Leventi's trustee, conveyed a mortgage of $320,000 against the Wisconsin property; she conveyed a second mortgage of $1,000,000 in April 2008.

11. In a July 2008 "Closing Agreement," the Doucases admitted that their tax liability for 2000 and 2002-2006 was $2,302,184.16. They further agreed that:

> Amounts characterized as loans from Engage to Astra shall be recharacterized as employee compensation paid by Engage to William P. Doucas for 1997 and all taxable periods thereafter....
>
> Amounts characterized as loans from Astra and Leventi to the [Doucases] shall be recharacterized as taxable income from Astra and Leventi to the [Doucases] for 1997 and all taxable periods thereafter....
>
> Leventi shall be treated as a grantor trust under [Internal Revenue Code] §§ 671 through 677 and the [Doucases] shall be treated as the grantors and owners of Leventi for all taxable years since the creation of Leventi and until the [Doucases] are notified by the Commissioner that it and they shall not be so treated...

12. In February 2009, in accordance with a liability stipulation, a Wisconsin federal court entered judgment in favor of the United States and against the Doucases for $146,957.42 in unpaid income tax liabilities for 1992, 1994, 1995, and 1998, plus interest and statutory additions. Judgment was also entered against William P. Doucas for $58,193.82 in unpaid trust-fund-penalty assessments involving Doucas Motors, Inc., plus interest and statutory additions. In July 2010, based on the agreement of the parties, the court ordered William P. Doucas to pay $20,201 per month toward these judgments.

13. As of this date, there has been no payment toward the tax liens that arose pursuant to the July 2008 Closing Agreement.

**Standard of Review**

3

When seeking a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. NRDC, Inc., 129 S. Ct. 365, 374 (2008). Given the "extraordinary and drastic" nature of preliminary injunctions, they may be granted only where the plaintiff clearly satisfies the burden of persuasion as to each of these requirements. All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989). To meet its burden the plaintiff may rely on affidavits and hearsay materials that would not be admissible as evidence for the entry of a permanent injunction. Levi Strauss & Co. v. Sunrise Int'l Trading Inc., 51 F.3d 982, 985 (11th Cir. 1995).

**Conclusions of Law**

In Count I of the complaint, Plaintiff seeks to reduce the tax liens for 2000 and 2002-2006 to judgment. In Count II, Plaintiff requests a declaratory judgment that the trust is a sham or alter ego of the Doucases. In Count III, Plaintiff seeks to foreclose the tax liens against the Engage Networks stock held by the Doucases personally and through Leventi's interest in Astra.[2] Plaintiff asks that Defendants; their agents, servants, employees, officers, and attorneys; and all persons in active concert and participation with them be preliminarily enjoined from: 1) encumbering, liquidating, transferring, or otherwise disposing of Engage Networks stock or its material assets, including those of its wholly-owned subsidiary Elutions, Inc.; or 2) dissipating any of Engage Networks's "goodwill."

"'Property' and 'rights to property' for the purposes of [federal tax liens] include not only

---

[2] Because Plaintiff seeks "final equitable relief of the same character as the preliminary injunction" rather than money damages, prejudgment restriction of the stock is authorized. Rosen v. Cascade Int'l, Inc., 21 F.3d 1520, 1529 n.19 (11th Cir. 1994).

the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee ... of the delinquent taxpayer." May v. United States, No. 07-10531, 2007 WL 3287513, at *1 (11th Cir. 2007) (per curiam) (unpublished) (citations and internal quotation marks omitted). "Whether a [trust] is a taxpayer's nominee turns on: (1) the control taxpayer exercises over the nominee and its assets; (2) the use of [trust] funds to pay taxpayer's personal expenses; and (3) the family relationship, if any, between the taxpayer and the [trust administrators]." Shades Ridge Holding Co. v. United States, 888 F.2d 725, 729 (11th Cir. 1989) (citations omitted).[3]

The Doucases exercise virtually unlimited control over Leventi and its assets. Real estate, boats, and luxury vehicles purchased by and titled to Leventi have been used by the Doucases as personal assets. The Doucases used the Wisconsin property as a personal residence; Elizabeth Doucas, as trustee, took out two mortgages against the property totaling $1,320,000. The boats and vehicles are depreciable assets that were used for the Doucases' personal benefit. Moreover, Leventi's bank account was used to pay the Doucases' personal expenses; indeed, from 1997 to 2005 the Doucases did not have their own bank account.

Leventi's nominee status is reinforced by the Doucases' concessions within the July 2008 Closing Agreement, in which they agreed that "loans" they received from Astra and Leventi would be recharacterized as taxable income. Moreover, they agreed that they would be treated as "grantors and owners" of Leventi and that Leventi would be treated as a grantor trust under 26 U.S.C. §§ 671-

---

[3] Although nominee status is a question of state law, Old W. Annuity & Life Ins. Co. v. Apollo Grp., 605 F.3d 856, 861 (11th Cir. 2010) (per curiam), "[t]he issue under either state or federal law depends upon who has 'active' or 'substantial' control." Shades Ridge, 888 F.2d at 728 (citation omitted).

77. These sections require Leventi to be treated as the Doucases' property when they "can exercise administrative powers over the trust without the consent of an adverse party." Stoecklin v. Comm'r of Internal Revenue, 865 F.2d 1221, 1223 (11th Cir. 1989) (per curiam). The Doucases clearly exercise administrative powers over Leventi, and there is no evidence that they require an adverse party's consent to do so.

Based on the current record, Plaintiff will likely succeed in reducing the tax liens for 2000 and 2002-2006 to judgment and in obtaining a declaratory judgment that Leventi is the Doucases' alter ego. Because Leventi is the sole member of Astra, Plaintiff will also likely succeed in foreclosing on Astra's Engage Networks stock as well as the Doucases' stock.

The remaining factors similarly favor a preliminary injunction. Plaintiff is likely to suffer irreparable harm if the preliminary injunction is not granted as its tax liens would be invalid against the stock if a purchaser lacked notice of the liens.[4] See United States v. Pavenick, 197 F. Supp. 257, 259 (D.N.J. 1961) (enjoining taxpayer from selling or transferring corporate stock pending outcome of action to foreclose tax lien); 26 U.S.C. § 6323(b)(1). The balance of equities tips in favor of granting a preliminary injunction because it would be "a reasonable measure to preserve the status quo," and Defendants offer no evidence or argument that they would be harmed.[5] United States v. First Nat'l City Bank, 379 U.S. 378, 385 (1965) (approving temporary injunction enjoining bank from transferring corporation's property or rights to property held by bank pending adjudication of

---

[4] Defendants emphasize that the Doucases agreed to pay approximately $20,000 per month toward other tax debts, but that agreement was reached only after the United States filed a claim in the Wisconsin federal court.

[5] Defendants argue that Engage Networks and Elutions, Inc. would be harmed insofar as their operations are restricted. However, those entities are not Defendants in this matter.

action to foreclose tax liens on corporation's property); see Pavenick, 197 F. Supp at 260. Finally, the public's interest in the enforcement of tax laws outweighs any potential harm to Engage Networks or its subsidiaries.

Consequently, Defendants; their agents, servants, employees, officers, and attorneys; and all persons in active concert and participation with them should be preliminarily enjoined from encumbering, liquidating, transferring, or otherwise disposing of Engage Networks stock or its material assets, including those of its wholly-owned subsidiary Elutions, Inc. The totality of the circumstances warrants restriction of the entirety of the stock given: 1) the Doucases' personal stock was almost completely encumbered in December 2008; 2) the lack of evidence as to whether Astra's stock is similarly encumbered; and 3) uncertainty as to what the stock will be worth once Plaintiff's claims are resolved.

To avoid unnecessary interference with business operations and to clarify the proposed injunction's terms, a material asset should be defined as one worth $250,000 or more (representing approximately 10% of the tax liens and approximately 2.5% of the December 2008 value of the Engage Networks stock). Moreover, the injunction should not proscribe the dissipation of Engage Networks's "goodwill." The term's vagueness would make it unacceptably difficult for "an ordinary person ... to ascertain ... exactly what conduct is proscribed." Am. Red Cross v. Palm Beach Blood Bank, Inc., 143 F.3d 1407, 1411 (11th Cir. 1998).

## **Conclusion**

Plaintiff has established that it is likely to succeed in obtaining a declaratory judgment that Leventi is the Doucases' alter ego and in foreclosing on the Engage Networks stock held by the Doucases personally and through Leventi. Plaintiff has further met its burden of persuasion as to

the remaining requirements for a preliminary injunction. Accordingly, the court recommends that Defendants; their agents, servants, employees, officers, and attorneys; and all persons in active concert and participation with them be preliminarily enjoined from encumbering, liquidating, transferring, or otherwise disposing of the corporate stock of Engage Networks, Inc. or its assets worth $250,000 or more, including those of its wholly-owned subsidiary Elutions, Inc. No bond should be required as the Plaintiff is the United States of America. See Fed. R. Civ. P. 65(c).

It is therefore **RECOMMENDED** that:

(1)  Plaintiff's Motion for Preliminary Injunction (Dkt. 5) be **GRANTED IN PART**; and

(2)  Defendants; their agents, servants, employees, officers, and attorneys; and all persons in active concert and participation with them be preliminarily enjoined from encumbering, liquidating, transferring, or otherwise disposing of the corporate stock of Engage Networks, Inc. or its assets worth $250,000 or more, including those of its wholly-owned subsidiary Elutions, Inc.

**Date:   October 20, 2010**

ELIZABETH A JENKINS
United States Magistrate Judge

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).


Copies to:
Counsel of Record
District Judge